# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALEX SHNAYDERMAN, <br><br> Plaintiff, <br><br> v. <br><br> CELL-U-MORE, INC. and ROY DAVOULT <br><br> Defendants. | Civil Action No. 3:18-cv-5103 (PGS)(TJB) <br><br> **MEMORANDUM AND ORDER** |

Presently before the Court is Defendants Cell-U-More, Inc. and Roy Davoult's Motion to Dismiss Plaintiff Alex Shnayderman's Complaint pursuant Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6). (ECF No. 6). For the reasons discussed herein, Defendants' Motion to Dismiss is granted in part and denied in part.

### BACKGROUND

This case arises from a dispute between former business partners and friends. Plaintiff Alex Shnayderman, a New Jersey resident, brings this matter against Defendants Roy Davoult and Cell-U-More, based on a purported breach of contract. According to the Complaint, Davoult, a Texas resident and owner of Cells-U-More, approached Plaintiff about obtaining a $200,000 loan. (Complaint at ¶ 6). Apparently, Cells-U-More, a Texas mobile phone business with its principal place of business in Texas, had fallen on hard times and Davoult needed additional funding to help keep his business afloat. (*Id.* at ¶¶ 7-8). In June 2013, Davoult flew to New Jersey to meet with Plaintiff to "further solicit" a loan from him. (*Id.* at ¶ 10). Once at Plaintiff's home, the two reached an oral agreement, whereby Plaintiff would extend a $200,000 loan to Davoult, "with a terms of

repayment of the loan in a short period of time and Defendant Davoult personally guaranteeing repayment of the loan." (*Id.* at ¶ 11). After orally agreeing to the terms of the loan, Plaintiff wired $200,000 from his account to Cells-U-More's on July 10, 2013. (*Id.* at ¶ 12). Thereafter, Defendants purportedly failed to timely repay Plaintiff; as such, Plaintiff now brings this four-count complaint, alleging: (1) breach of contract; (2) legal fraud; (3) equitable fraud; (4) unjust enrichment; and (5) guaranty.

In seeking to demonstrate a lack of personal jurisdiction, Defendants attach Davoult's declaration to their Brief in Support of their Motion to Dismiss.[1] (ECF No. 6-2). As background, Davoult explained that he and Plaintiff were co-owners of a junior hockey team, the Wichita Falls Wildcats, which was worth approximately $400,000. (*Id.* at ¶ 7, 41). According to Davoult, Cells-U-More's business is limited to its retail locations in Texas, Oklahoma, Kansas and Nebraska. (*Id.* at ¶¶ 12, 15). In addition, Davoult avers that Cells-U-More has never done business in, or solicited customers from, New Jersey; nor has Cells-U-More "had any meaningful, systematic, or continuous contacts with New Jersey or New Jersey's residents." (*Id.* at ¶ 15). Regarding the party's loan agreement, Davoult disclaims having ever solicited a loan from Plaintiff; instead, he claims:

> In June 2013, [Plaintiff] and I had a *telephone* conversation to discuss our team. I was in Texas for that phone call. On a personal note, during the call I informed him that [Cells-U-More] was not doing well, which was putting a financial strain on me and the business, and therefore, I was considering selling my ownership interest in the Wildcats, which was then valued at about $200,000.
>
> Without my requesting or prompting, [Plaintiff] offered to help after citing the growing success of his medical billing business and asked me how much money we needed.

---

[1] The Court considers these facts outside of the Complaint to the extent they assist in evaluating Defendants' motion to dismiss for lack of personal jurisdiction. *See Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 603-04 (3d Cir. 1990).

2

(*Id.* at ¶¶ 21-22). According to Davoult, the terms of the agreement were that Plaintiff would wire $200,000 to him and, in exchange, Plaintiff would receive Davoult's share of the team, if they were to sell it. (*Id.* at ¶¶ 23-24). In any event, Davoult claims that in late June 2013, Plaintiff invited him to New Jersey to see an ice hockey rink that he recently purchased and a New Jersey junior hockey team that he was interested in acquiring. (*Id.* at ¶ 29). Davoult averred that the trip was purely personal and no discussions regarding the loan were ever made. (*Id.* at ¶¶ 28, 30-31).

In response to Defendants' motion, Plaintiff attached a declaration seeking to establish personal jurisdiction. (ECF No. 8-1). Contrary to Davoult's declaration, Plaintiff claims that Davoult's New Jersey trip was not strictly personal. (*Id.* at ¶ 4). According to Plaintiff, during Davoult's visit, he mentioned the financial difficulties he was experiencing with Cells-U-More and that he needed $200,000 to keep the business in operation. (*Id.*). Plaintiff expressed concern for Davoult's financial situation, and mentioned that he may be able to help him, although no agreement was made. (*Id.* at ¶ 5). Apparently, after returning to Texas, Davoult continued to contact Plaintiff about providing the $200,000 and, eventually, Plaintiff agreed. (*Id.* at ¶ 6). According to Plaintiff, as conditions for the loan, Davoult agreed to provide a personal financial statement and assurances. (*Id.* at ¶ 7). Satisfied with Davoult's financial statements, Plaintiff wired him the money through one of his business accounts, ACB Receivables Management, Inc. (*Id.* at ¶ 15).

**LEGAL STANDARD**

I. <u>Federal Rule of Civil Procedure 12(b)(1)</u>

Under Federal Rules of Civil Procedure 12(b)(1) a claim can be dismissed for "lack of jurisdiction over the subject matter." "A motion to dismiss for lack of standing is also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Federman v. Bank*

*of Am., N.A.*, No. 14-0441, 2014 U.S. Dist. LEXIS 175565, at *10 (D.N.J. Dec. 16, 2014) (quoting *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (quoting *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

Here, Defendants contend that because ACB Receivables was the party that provided the loan to Davoult, not Plaintiff, he lacks standing to assert any claims. The Court disagrees.

"Article III of the United States Constitution 'limits the jurisdiction of federal courts to "Cases" and "Controversies." *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 414 (3d Cir. 2013) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992)). To establish Article III standing, a plaintiff must allege: "(1) an 'injury in fact'; (2) 'a causal connection between the injury and the conduct complained of — the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court'; and (3) a showing that it 'be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *N.J. Physicians, Inc. v. President of the U.S.*, 653 F.3d 234, 238 (3d Cir. 2011).

Here, Plaintiff, not ACB Receivables Management, entered an agreement with Davoult to wire money to him. In doing so, Plaintiff authorized ABC Receivables to forward the funds to Davoult. Since forwarding the loan proceeds, Davoult has failed to make Plaintiff whole. As such, Plaintiff established Article III standing, since he suffered injury in fact by providing money through ABC Receivables to Davoult, and Davoult failing to perform his end of the agreement. As such, the Court will not dismiss Plaintiff's Complaint for lack of standing. However, the parties

may re-open the standing issue after discovery if a fact question arises about Plaintiff's ownership and control of the funds.

II.     Federal Rule of Civil Procedure 12(b)(2)

Defendants next seek dismissal of Plaintiff's Complaint, contending that the Court lacks personal jurisdiction. Plaintiff responds, arguing that the Court has general and specific jurisdiction, based on "Davoult's repeated contact in New Jersey in dealing with the Hattrix South, L.P. Partnership and subsequent loan agreement with Cells-U-More, Inc." The Court considers each in turn.

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a complaint may be dismissed for lack of personal jurisdiction. "If an issue is raised as to whether a court lacks personal jurisdiction over a defendant, the plaintiff bears the burden of showing that personal jurisdiction exists." *Marten v. Godwin*, 499 F.3d 290, 295-96 (3d Cir. 2007). "[C]ourts reviewing a motion to dismiss a case for lack of in personam jurisdiction must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992). "The plaintiff must sustain its burden of proof through sworn affidavits or other competent evidence." *North Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 689 (3d Cir. 1990) (internal quotation marks and citation omitted). Moreover, "the plaintiff must establish either that the particular cause of action sued upon arose from the defendant's activities within the forum state ('specific jurisdiction') or that the defendant has 'continuous and systematic' contacts with the forum state ('general jurisdiction')." *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (citations omitted).

Under Federal Rule of Civil Procedure 4(k), "a federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the

law of that state." *Marten*, 499 F.3d at 296 (quoting *Provident Nat'l Bank*, 819 F.2d at 437). Pursuant to the New Jersey long-arm rule, N.J. Ct. R. 4:4-4(c), personal jurisdiction in New Jersey "extends to the limits of the Fourteenth Amendment Due Process protection." *Carteret Sav. Bank, FA*, 954 F.2d at 145. Therefore, this Court is "constrained, under New Jersey's long-arm rule, only by the 'traditional notions of fair play and substantial justice,' inhering in the Due Process Clause of the Constitution." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Those notions require that a defendant have certain minimum contacts with the forum state based upon the defendant's own purposeful availment "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

*1.    Specific Jurisdiction*

Plaintiff first contends that the Court has specific jurisdiction over both Defendant Davoult and Cells-U-More, based on Davoult's periodic trips to New Jersey and solicitation of a loan from Plaintiff. The Fourteenth Amendment permits a state to exercise jurisdiction over an out-of-state defendant only where "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp.*, 471 U.S. at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). This "fair warning" requirement, "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

To prove that the defendant has purposefully availed itself of that state, a plaintiff may rely upon a defendant's specific contacts with the forum state, commonly referred to as specific

jurisdiction. *Id.* Specific jurisdiction is invoked when a claim is related to or arises of out the defendant's contacts with the forum. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984); *Dollar Sav. Bank v. First Sec. Bank of Utah*, 746 F.2d 208, 211 (3d Cir. 1984). A court must first determine whether the defendant had the minimum contacts with the forum necessary for the defendant to have "reasonably anticipate[d] being haled into court there." *World-Wide Volkswagen Corp.*, 444 U.S. at 297 (citations omitted). What constitutes minimum contacts varies with the "quality and nature of defendant's activity." *Hanson*, 357 U.S. at 253. "Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 473 (internal quotation marks and citations omitted) (emphasis added).

In assessing the sufficiency of minimum contacts for personal jurisdiction, the court must focus on the "relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 770 (1984) (internal quotation marks and citation omitted). This inquiry requires the court to consider three factors: (1) "the defendant must have 'purposefully directed [its] activities' at the forum"; (2) "the litigation must 'arise out of or relate to' at least one of those activities"; and (3) "if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (citations omitted).

Here, when construing the facts and allegations in Plaintiff's favor, the Court is satisfied that there are sufficient facts alleged establishing specific jurisdiction over Davoult. Neither party disputes that Davoult, on several occasions, visited New Jersey. More importantly, according to

7

the Complaint, during one of these trips Davoult and Plaintiff discussed Plaintiff loaning Davoult $200,000 and the two ultimately agreed to certain terms. As such, the Court finds that the present matter "arises out of" activities that took place while Davoult was in New Jersey. However, this does not preclude the Court from revisiting the issue should new facts arise that call into question the Court's jurisdiction. *See Carteret Sav. Bank, FA*, 954 F.2d at 142 n.1 ("a court is not precluded from revisiting the issue [of personal jurisdiction] if it appears that the facts alleged to support jurisdiction are in dispute.").

Turning to Cells-U-More, there are no facts or allegations before the Court that would establish specific jurisdiction. Neither the Complaint nor the parties' declarations mention any contacts that Cells-U-More has with New Jersey, or any activity involving Cells-U-More that "gives rise" to the present litigation. In fact, according to both the Complaint and Plaintiff's declaration, it was Davoult, not Cells-U-More, who travelled to New Jersey and solicited the loan from Plaintiff. As such, because there are no facts demonstrating any activity or specific contacts that Cells-U-More has with New Jersey, the Court will not exercise specific personal jurisdiction over it.

2. *General Jurisdiction*

Having concluded that the Court lacks specific personal jurisdiction over Cells-U-More, the Court next considers whether it nevertheless has general jurisdiction. "General jurisdiction is based upon the defendant's 'continuous and systematic' contacts with the forum and exists even if the plaintiff's cause of action arises from the defendant's non-forum related activities." *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) (citation omitted). "For a corporate defendant, the main bases for general jurisdiction are (1) the place of incorporation; and (2) the principal place of business." *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 173 (D.N.J. 2016) (citing *Daimler*

*AG v. Bauman*, 571 U.S. 117, 137 (2014)). However, *Daimler* also noted that "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, 571 U.S. at 139 n.20. After *Daimler*, courts have recognized that "it is 'incredibly difficult to establish general jurisdiction [over a corporation] in a forum other than the place of incorporation or principal place of business.'" *Chavez v. Dole Food Co.*, 836 F.3d 205, 224 (3d Cir. 2016) (citing *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014)).

Here, under *Daimler*, the Court lacks general jurisdiction over Cells-U-More. Cells-U-More is not incorporated in New Jersey, nor is its principal place of business in this state. "Aside from these exemplar bases, general jurisdiction may arise in the 'exceptional case' where 'a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State.'" *Display Works*, 182 F. Supp. 3d at 173 (quoting *Daimler*, 571 U.S. at 139 n.19). Here, Plaintiff fails to allege any specific facts or actions by Cells-U-More that could be reasonably construed as "continuous and substantial" contacts with New Jersey. As such, because Cells-U-More's contacts with New Jersey are not continuous or substantial, it cannot be found to be essentially home in this state. Therefore, the Court lacks general jurisdiction over Cells-U-More as well.

In sum, the Court finds that specific jurisdiction exists against Davoult and, therefore, will deny Defendants' Motion to Dismiss under 12(b)(2) as it relates to him. However, because the Court lacks specific and general jurisdiction over Cells-U-More, Defendants' Motion to Dismiss is granted as to it.

III. Federal Rule of Civil Procedure 12(b)(6)

On a motion to dismiss for failure to state a claim pursuant to Federal Rule Civil Procedure 12(b)(6), the Court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal,* 556 U.S. at 678-79; *see also Morse v. Lower Merion School District,* 132 F.3d 902, 906 (3d Cir. 1997). A complaint should be dismissed only if the well-pleaded alleged facts, taken as true, fail to state a claim. *See In re Warfarin Sodium,* 214 F.3d 395, 397-98 (3d Cir. 2000).

*1.   Breach of Contract (Count I)*

Defendants next seek dismissal of Count I of Plaintiff's Complaint, which asserts a claim for breach of contract. Specifically, Defendants contend that because he failed to allege the terms of the agreement, or the consideration made by Defendant, he fails to adequately plead a breach of contract. The Court agrees.

"To prevail on a breach of contract claim, a party must prove a valid contract between the parties, the opposing party's failure to perform a defined obligation under the contract, and the breach caused the claimant to sustained damages." *EnviroFinance Group, LLC v. Envtl. Barrier Co., LLC,* 113 A.3d 775, 787, (N.J. Super. Ct. App. Div. 2015). Moreover, to be enforceable, a

contract "must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992) (quoting *West Caldwell v. Caldwell*, 138 A.2d 402, 410 (1958)). "No contract is enforceable, of course, without the flow of consideration -- both sides must 'get something' out of the exchange." *Cont'l Bank of Pa. v. Barclay Riding Acad.*, 459 A.2d 1163, 1171 (N.J. 1983).

Here, fatal to Plaintiff's breach of contract claim is the fact that the terms of agreement are unspecified. In his Complaint, Plaintiff contends that Defendants were given "more time than originally agreed upon by the parties to repay Plaintiff"; however, nowhere in the Complaint does Plaintiff specify exactly how long Defendants had to repay Plaintiff and what the terms of the repayment would be. Because these essential terms are not clearly set forth, the Court is unable to find that an enforceable contract exists. *See Weichert Co. Realtors*, 608 A.2d at 284 ("Where the parties do not agree to one or more essential terms . . . courts generally hold that the agreement is unenforceable."). As such, since the Complaint fails to allege the existence of an enforceable contract, the Court grants dismissal of Count I without prejudice.

2. *Legal and Equitable Fraud (Counts II and III)*

Under Counts II and III, Plaintiff claims that Defendants engaged in legal and equitable fraud by purportedly making significant misrepresentations.

"The elements for actionable fraud under New Jersey law are proof that the defendant made (1) a material misrepresentation of present or past fact (2) with knowledge of its falsity (3) with the intention that the other party rely thereon (4) and which resulted in reasonable reliance by plaintiff." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1182 (3d Cir. 1992) (citing *Jewish Ctr. of Sussex Cnty. v. Whale*, 432 A.2d 521, 524 (N.J. 1981)). "[A]n action for fraud may be either legal or equitable in nature[;]" when a plaintiff advances a claim of *legal* fraud, he or she

must demonstrate scienter, whereas under equitable fraud they do not. *Id.* Since Plaintiff alleges fraud, he is also required to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). "In order to satisfy Rule 9(b), plaintiffs must plead with particularity 'the "circumstances" of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.'" *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)). Put differently, Rule 9(b) requires "plaintiffs to plead 'the who, what, when, where, and how.'" *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999).

Here, Plaintiff's fraud claims fail for several reasons. First, Plaintiff fails to allege a material misrepresentation. In the Complaint, Plaintiff alleges generally that Defendants "made a number of significant misrepresentations to Plaintiff including the financial stability of each Defendant, the purpose of the loan requested, repayment time frame and the status of stock sales." (Complaint at ¶ 21). However these assertions are belied by the factual allegations presented in the Complaint. As Plaintiff, himself, alleges, Defendants repeatedly solicited loans from Plaintiff, because Cell-U-More was struggling financially; so it is unclear how Defendants deceived Plaintiff of their financial stability. (*Id.* at ¶ 8). As such, contrary to Plaintiff's assertions in Count II and III, because Defendants made clear to Plaintiff their financial circumstances and their need for the loan, there was no misrepresentation. In addition, the Plaintiff fails to plead his fraud claims with any precision or specificity. Plaintiff fails to specify, in any detail, what representations Defendants made to Plaintiff, when these statements were made, and, most importantly, how these representations were false. Simply put, these claims are nothing more than conclusory statements

that Defendants somehow misrepresented their financial status. *See Iqbal*, 556 U.S. at 678. As such, for these reasons, Counts II and III are dismissed without prejudice.

3.  *Unjust Enrichment (Count IV)*

Defendants next seek dismissal of Count IV of Plaintiff's Complaint, wherein he alleges unjust enrichment. Mirroring their Article III argument, Defendants contend that Plaintiff cannot assert unjust enrichment, since it received funds from ACB Receivables, not Plaintiff. The Court disagrees.

"Generally, to claim unjust enrichment, a plaintiff must allege that '(1) at plaintiff's expense (2) defendant received benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it.'" *In re Ford Motor Co. E-350 Van Prods. Liab. Litigation*, No. 03-4558, 2008 U.S. Dist. LEXIS 73690, at *63 (D.N.J. Sept. 3, 2008) (quoting *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004)). "The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994). Here, Defendants contend that because they received transferred funds from ACB Receivables, they did not receive any benefits at Plaintiff's expense. However, as discussed above, when reviewing the Complaint, Plaintiff alleges that he transferred his funds, through his commercial account with ACB Receivables, to Defendants. As such, for purposes of this motion, the Court is satisfied that the Complaint sufficiently alleges that Plaintiff conferred a benefit to Defendants. Therefore, Defendants' Motion to Dismiss Count IV is denied.

*4. Guarantee (Count V)*

In Count V, Plaintiff alleges that Defendant Davoult breached his personal guaranty to repay him for the loan to Cell-U-More. Specifically, the Complaint states, "[i]n soliciting the aforementioned loan for Defendant Cell-U-More, Inc., from Plaintiff, and in providing security to Plaintiff, Defendant Davoult personally guaranteed that he would pay the loan." (Complaint at ¶ 34). Defendants contend that dismissal is warranted, since this personal guarantee was not made in writing, as required by the New Jersey Statute of Frauds. Plaintiff does not respond to this argument.

"New Jersey follows the rule that an agreement to assume the debt of another must be in writing." *Atl. City Assocs. LLC v. Carter & Burgess Consultants, Inc.*, No. 05-3227, 2007 U.S. Dist. LEXIS 68118, at *16 (D.N.J. Sept. 14, 2007) (citations omitted). Specifically, New Jersey's Statute of Frauds states:

> A promise to be liable for the obligation of another person, in order to be enforceable, shall be in a writing signed by the person assuming the liability or by that person's agent. The consideration for the promise need not be stated in the writing.

N.J.S.A. § 25:1-15. As such, the "statute makes clear that the writing must be signed by the person assuming the debt, or by that person's agent." *Indagro, S.A. v. Veniamin Nilva & Viva Chem. Corp.*, No. 07-3742, 2016 U.S. Dist. LEXIS 85759, at *13 (D.N.J. June 30, 2016), *aff'd*, 2018 U.S. App. LEXIS 11525 (3d Cir. May 3, 2018). Here, fatal to Plaintiff's guarantee claim is the fact that the purported guaranty to pay the loan was not memorialized in writing. As such, Count V is dismissed.

## ORDER

Having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented, and for good cause shown, and for all of the foregoing reasons,

IT IS on this 20th day of November, 2018,

**ORDERED** that Defendants' Motion to Dismiss (ECF No. 6) is **GRANTED** in part and **DENIED** in part and denied in part as follows:

- Defendants' Rule 12(b)(1) Motion to Dismiss for lack of standing is **DENIED**
- Defendants' Rule 12(b)(2) Motion is to Dismiss is **GRANTED** as to Cell-U-More and **DENIED** as to Davoult
- Defendants' Motion to Dismiss Counts I, II, III, and V are **GRANTED WITHOUT PREJUDICE**
- Defendants' Motion to Dismiss Count IV is **DENIED**; and it is further

**ORDERED** that Plaintiff has thirty (30) days from the date of this memorandum and order to file an Amended Complaint.

_____<br>
PETER G. SHERIDAN, U.S.D.J.